**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
UNION MUTUAL FIRE INSURANCE
COMPANY,

                Plaintiff and Counter-Defendant,       <u>**MEMORANDUM AND ORDER**</u>
                                       23-CV-07792 (OEM) (PK)
          -against-

JOEL WERTZBERGER, 1022 EAST 226TH
JOYLAND LLC, JOYLAND MANAGEMENT
LLC,
                Defendants and Counter-Plaintiffs.
----------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

      Plaintiff and counterclaim-defendant Union Mutual Fire Insurance Company ("Plaintiff")

brought this action against defendants and counterclaim-plaintiffs Joel Wertzberger, 1022 East

226th Joyland LLC, and Joyland Management LLC (collectively, "Defendants") under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, on October 18, 2023.  *See* Complaint (the

"Complaint" or "Compl."), Dkt. 1.    Plaintiff alleges that Defendants made material

misrepresentations in two successive general liability and property package insurance policy

applications and breached the duties and conditions outlined in those policies.  *Id.* ¶ 35.  Plaintiff

seeks a declaration that the policies were validly rescinded and thus void *ab initio* pursuant to New

York Insurance Law § 3105 and a declaration that Plaintiff has no duty to defend or indemnify

Defendants in connection with two underlying claims against Defendants purportedly arising

under the policies.  *Id.* at 7-8.  Defendants countersue, seeking a declaration that Plaintiff has a

duty to defend and indemnify Defendants as insureds in the two actions arising under the policies

and that Plaintiff must pay Defendants' legal fees incurred in this action for casting them in a

defensive posture regarding coverage.  Answer and Counterclaim ("Answer & Countercl.") at 10-12, Dkt. 11.  Before the Court are the parties' cross-motions for summary judgment.[1]

For the following reasons, Defendants' motion for summary judgment ("Defendants' Motion") is granted in part and denied in part, and Plaintiff's motion for summary judgment ("Plaintiff's Motion") is denied.

# BACKGROUND

## A. The Parties and Property

Defendant Joel Wertzberger ("Wertzberger") is the sole member of defendant 1022 East 226th Joyland, LLC ("Property Defendant"), which owns the property located at 1022 East 226th Street, Bronx, New York, 10466 (the "Property").  Defs.' Rule 56.1 ¶¶ 3-4; Pl.'s Rule 56.1 ¶¶ 3-4.  Judy Minster ("Minster") is the sole member of defendant Joyland Management, LLC ("Management Defendant"), which manages the Property.  Defs.' Rule 56.1 ¶¶ 5-6.  Wertzberger also owns Hertz Clearing LLC, which owns real property located at 762 Miller Avenue, Brooklyn, New York, 11207 (the "Hertz Property").  *Id.* ¶ 15.

The Property "is a three-story building, built as a three-family house, with one apartment on each floor."  *Id.* ¶ 18.  During the relevant periods, the persons that resided in the apartments on the second and third floors of the Property differed from the entity that paid the rent for their

---

[1] *See* Memorandum of Law in Support of Joel Wertzberger, 1022 East 226th Joyland, LLC and Joyland Management, LLC's Motion for Summary Judgment ("Defs.' Mot."), Dkt. 36-1; Rule 56.1 Statement of Undisputed Facts ("Defs.' Rule 56.1"), Dkt. 39; Memorandum of Law in Oppositi[o]n to Defendants['] Motion for Summary Judgment ("Pl.'s Opp'n"), Dkt. 37; Union Mutual's Rule 56.1 Response & Counter Statement of Undisputed Material Facts ("Pl.'s Rule 56.1 Counterstatement" and "Pl.'s Rule 56.1 Resp."), Dkt. 42; Reply Memorandum of Law in Further Support of Joel Wertzberger, 1022 East 226th Joyland, LLC and Joyland Management, LLC's Motion for Summary Judgment ("Defs.' Reply"), Dkt. 38; Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), Dkt. 40-44; Union Mutual's Rule 56.1 Statement of Undisputed Material Facts Submitted in Support of Motion for Summary Judgment, ("Pl.'s Rule 56.1"), Dkt. 40-3; Joel Wertzberger, 1022 East 226th Joyland, LLC and Joyland Management, LLC's Memorandum of Law in Opposition to Union Mutual Fire Insurance Company's Motion for Summary Judgment ("Defs.' Opp'n"), Dkt. 40-46; Response to Union Mutual's Rule 56.1 Statement ("Defs.' Rule 56.1 Response"), Dkt. 40-45; Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply"), Dkt. 40-47.

apartments. *Id.* ¶¶ 25, 28. WellLife Network Inc., formerly known as PSCH Inc. ("WellLife"), and the Institute for Community Living ("ICL") are organizations that assist people by paying their rent (WellLife and ICL, collectively, the "Social Service Agencies"). *Id.* ¶¶ 16-17. Eleazar Rivera ("Rivera") lived in Unit 2 of the Property from May 2019 through December 2022, but ICL paid the rent on his behalf. *Id.* ¶¶ 22-23, 25. Similarly, Hector Melendez ("Melendez") lived in Unit 3 of the Property from June 2020 through August 2021, but WellLife paid the rent on his behalf. *Id.* ¶¶ 26, 28.

Plaintiff is an insurance company licensed to issue commercial insurance policies. *Id.* ¶ 1. Non-party Roundhill Express, LLC ("Roundhill"), is a third-party claims administrator for Plaintiff and the authorized agent for commercial insurance policies issued by Plaintiff in New York State. *Id.* ¶ 12; Pl.'s Rule 56.1 ¶ 11. "Roundhill operates a website where brokers can complete an application, get a quote, and request that a policy be bound." Defs.' Rule 56.1 ¶ 49.

## B. The Insurance Application and Policies

Management Defendant, through insurance brokers Miriam Ungar ("Broker Ungar") and Andrew Portnoy ("Broker Portnoy"), submitted an application for commercial general liability and property package insurance for Property Defendant to Plaintiff through the Roundhill website platform. *Id.* ¶¶ 29-30, 40; Pl.'s Rule 56.1 ¶ 19. The Roundhill application includes the question: *"Are any of the habitational units rented to anyone other than individuals on a long term lease for their exclusive use and that of their immediate families?"* (the "Question"). Defs.' Rule 56.1 ¶ 31; Pl.'s Rule 56.1 ¶ 20. When answering, Broker Portnoy stated "No." Defs.' Rule 56.1 ¶ 31; Pl.'s Rule 56.1 ¶ 23. He did so because he "understood the Question to be asking whether there were any short-term leases or triple net leases." Defs.' Rule 56.1 ¶ 33; Declaration of David BenHaim ("BenHaim Decl."), Exhibit E at 57:9-18, Dkt. 39-10. According to Broker Ungar, in her

experience, an insurer has never inquired about program tenants.  Pl.'s Rule 56.1 Resp. ¶ 36; *see also* BenHaim Decl., Exhibit D, Part 3, at 123:19-21, Dkt. 39-9.

After submission of the application on the Roundhill platform, Plaintiff issued a commercial package insurance policy for Property Defendant bearing policy number 314PK-69792-01 to Defendants for the period January 24, 2021, to January 24, 2022.  BenHaim Decl., Exhibit W ("01 Policy"), Dkt. 41-2.  It was renewed on December 6, 2021, for the period January 24, 2022, to January 24, 2023, as policy number 314PK-69792-02.  BenHaim Decl., Exhibit X ("02 Policy"), Dkt. 41-3 (01 Policy and 02 Policy, collectively, the "Policies"); Pl.'s Rule 56.1 Counterstatement ¶¶ 15, 18; Pl.'s Rule 56.1 Resp. ¶ 40.

The Policies obligate Plaintiff to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies [and] the right and duty to defend the insured against any 'suit' seeking those damages."  Def.'s Rule 56.1. ¶ 41; 01 Policy at UM000383; 02 Policy at UM000517.  More specifically, the Policies permit coverage if "[t]he 'bodily injury' is caused by an 'occurrence' that takes place in the 'coverage territory[.]'"  01 Policy at UM000383; 02 Policy at UM000517.  "Bodily injury" is defined by the Policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  01 Policy at UM000377; 02 Policy at UM000511.  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  01 Policy at UM000379; 02 Policy at UM000513.  The "coverage territory" recognized by the Policies includes "the United States of America (including its territories and possessions)[.]"  01 Policy at UM000377; 02 Policy at UM000511.

Plaintiff is bound by the decisions that Roundhill makes as its authorized agent regarding policies and claims. Pl.'s Rule 56.1 Resp. ¶ 13. When filling out a policy application, "[i]f the applicant answers any of the Preliminary Application Questions in the affirmative, then Roundhill's automated web-based underwriting system will block a policy quote from issuing and will not continue to the next step of the underwriting process." Pl.'s Rule 56.1 ¶ 16.

There is a dispute over whether Plaintiff's update of its policy application by adding a question should be construed as an admission that the prior version of questions were ambiguous. Defendants suggest that Plaintiff admitted the Question's ambiguity when it updated its policy application to include a question asking whether "any of the dwelling units [are] leased to or rented by a corporation, trust, LLC, or any form of legal entity other than a human being[.]" Defs.' Rule 56.1 ¶ 37; *see* BenHaim Decl., Exhibit V at 8,[2] Dkt. 41-1. Plaintiff counters that its decision to update its application questions was not an admission that the prior version of questions were ambiguous, and any such argument is legal, not factual. Pl.'s Rule 56.1 Resp. ¶ 37. While the admission of ambiguity is disputed, the addition of the question is not contested. *See* BenHaim Decl., Exhibit G at 71:2-25, Dkt. 39-12 (Plaintiff's underwriting agent, James Lambert, acknowledging that the additional application question was added).

Plaintiff's underwriting guidelines are attached to its contract with Roundhill and set forth fourteen different categories of risk that are unacceptable to Plaintiff (the "Underwriting Guidelines"). Defs.' Rule 56.1 ¶¶ 57-58. Plaintiff's Underwriting Guidelines do not define what "rented to" means, whether it refers to those named on the lease, paying the rent, or actually living at the apartment. *Id.* ¶ 60. The Underwriting Guidelines contain a provision, stating that "Risks answering affirmatively to any Preliminary Questions listed on the Roundhill Express Website

---

[2] The page number refers to the ECF PageID pagination.

from time to time" are unacceptable risks. *Id*. ¶ 61; *see also* BenHaim Decl., Exhibit AE at 1-2, Dkt. 39-36.

### C. The Hertz Property

On or about June 15, 2022, the Property manager, Minster, informed Broker Ungar that the Hertz Property had nonprofit organization leaseholders. Defs.' Rule 56.1 ¶¶ 64-67; Pl.'s Rule 56.1 Counterstatement ¶ 24. *See generally* BenHaim Decl., Exhibit AG, Dkt. 39-38. Upon learning this information, Roundhill responded by stating that the coverage should be replaced as soon as possible but did not immediately cancel the Hertz insurance policy and continued to collect the premium. Defs.' Rule 56.1 ¶¶ 69, 71; *see* BenHaim Decl. Exhibit AG at GLN.000176-77, Dkt. 39-38; BenHaim Decl., Exhibit AH at JW_000591-92, Dkt. 39-39.

### D. State Court Litigation

On or about September 1, 2022, and September 24, 2022, respectively, Melendez and Rivera were allegedly injured at the Property. Defs.' Rule 56.1 ¶¶ 42, 44. Their alleged injuries occurred during the 02 Policy period. *See* Pl.'s Rule 56.1 Resp. ¶¶ 42, 44. Rivera individually sued Property Defendant and Management Defendant, and Melendez individually sued Wertzberger, both in New York State Supreme Court, Bronx County (*Rivera* and *Melendez* actions, collectively, the "State Court Litigation"). *Id.*; BenHaim Decl., Exhibit AA, Dkt. 39-32; BenHaim Decl., Exhibit Y, Dkt. 39-30. Upon receipt of the *Rivera* action summons and complaint, Broker Ungar sent Broker Portnoy notice of the claims, seeking coverage under the Policies. Defs.' Rule 56.1 ¶ 45. After learning of the State Court Litigation, on October 11, 2023, Roundhill disclaimed coverage for both claims, asserting that by Broker Portnoy answering "no" to the Question, Defendants had made a material misrepresentation in the 01 and 02 Policy applications. Defs.' Rule 56.1 ¶¶ 46-47; BenHaim Decl., Exhibit AC, Dkt. 39-34; BenHaim Decl., Exhibit AD, Dkt. 39-35. Nonetheless, Plaintiff has afforded coverage for the *Rivera* action since its initiation

while the present litigation remains pending.  Supplemental Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Supplemental Mem.") at 1, Dkt. 44. Plaintiff maintains that the *Melendez* action "was discontinued and is no longer the subject of this litigation."  *Id.*

## PROCEDURAL HISTORY

On October 18, 2023, Plaintiff commenced this action against Defendants, seeking a declaratory judgment that the Policies are void *ab initio* and that Plaintiff does not owe Defendants a duty to defend or indemnify for the State Court Litigation based on Defendants' alleged material misrepresentations in their insurance policy applications.  *See generally* Compl.  On December 15, 2023, Defendants answered Plaintiff's Complaint, asserting twelve affirmative defenses and two counterclaims.  For their part, Defendants seek a declaratory judgment that Plaintiff owes Defendants a duty to defend and indemnify for the State Court Litigation and request that Plaintiff pay Defendants' legal fees incurred in the instant litigation.  *See generally* Answer & Countercl. On December 19, 2023, Plaintiff answered two of Defendants' affirmative defenses and both of Defendants' counterclaims.  *See* Reply to Counterclaims, Dkt. 13.  Discovery closed on September 10, 2024.  *See* Letter from Plaintiff to the Court (Sept. 10, 2024), Dkt. 24.  On March 7, 2025, the parties filed cross-motions for summary judgment.  *See generally* Defs.' Mot.; Pl.'s Mot.

On December 5, 2025, the Court advised that it was considering judgment independent of the pending cross-motions for summary judgment and requested that Plaintiff provide supplemental briefing as necessary on the issue of Plaintiff's duty to defend.  On December 9, 2025, in response to the Court's order, Plaintiff filed a supplemental memorandum in support.  *See* Pl.'s Supplemental Mem.

**LEGAL STANDARD**

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one which "might affect the outcome of the suit under the governing law" but unnecessary or irrelevant factual disputes will be disregarded. *Id.* The moving party bears the burden of showing it is entitled to summary judgment. *See id.* at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court's role is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

If the moving party meets its burden, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014); *Anderson,* 477 U.S. at 256 (The party opposing the motion "may not rest upon the mere allegations or denials in his pleadings, but must set forth specific facts showing there is a genuine issue for trial."). The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998). Moreover, if the evidence favoring the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

**DISCUSSION**

**A. Declaratory Judgment Act Jurisdiction**

Before reaching the merits of Plaintiff's and Defendants' respective declaratory judgment claims, the Court must determine whether jurisdiction under the Declaratory Judgment Act, 28

U.S.C. §§ 2201-2202 ("DJA"), is warranted. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93-94 (2d Cir. 2023). While "[l]egal disputes over insurance coverage have 'become the paradigm' for courts asserting DJA jurisdiction," *Union Mut. Fire Ins. Co. v. Moskovics*, 23-CV-03135 (NCM) (TAM), 2025 WL 317519, at *3 (E.D.N.Y. Jan. 28, 2025) (quoting *Niagara Transformer Corp.,* 57 F.4th at 92), "[t]here is 'nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court to hear a declaratory judgment action,'" *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 654-55 (S.D.N.Y. 2011) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995)). "By the Declaratory Judgment Act, Congress . . . created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants . . . ." *DDR Constr. Servs.*, 770 F. Supp. 2d at 655 (quoting *Wilton,* 515 U.S. at 288).

Here, a prerequisite to the Court's authority to issue a declaratory judgment on Plaintiff's duty to defend or indemnify is that there be "a case of actual controversy." *See Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.*, 681 F. Supp. 3d 155, 165 (S.D.N.Y. 2023) (quoting 28 U.S.C. § 2201(a)); *see also Union Mut. Fire Ins. Co. v. 142 Driggs LLC*, 23-CV-2629 (NGG) (LB), 2024 WL 302256, at *4 (E.D.N.Y. Jan. 26, 2024); *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 202 (S.D.N.Y. 2023). Declaratory relief may be sought in actions "by insurers against their insureds to bring certainty to their coverage obligations, particularly when the underlying actions against the insured already are pending." *Certified Testing Lab'ys Inc.,* 681 F. Supp. 3d at 165. To determine whether there is a controversy over the insurer's obligation, the court focuses on "whether there is pending litigation or the likelihood of future litigation that may require plaintiff to indemnify [defendant]." *142 Driggs LLC*, 2024 WL 302256, at *4 (quoting *U.S. Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 346 n.17 (E.D.N.Y. 2018) (alteration in original)); *see also Mt. Hawley Ins. Co. v. Pioneer Creek*

*B LLC*, 20-CV-00150 (ALC), 2021 WL 4427016, at *4 (S.D.N.Y. Sept. 27, 2021) ("In the context of liability insurance, a proper declaratory judgment involves live underlying claims against the insured."); *GuideOne Specialty Mutual Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 212 (E.D.N.Y. 2010) ("This case presents an immediate 'substantial controversy' . . . namely, whether and to what extent an insurance company is liable for future coverage."). Declaratory judgment actions brought by insured or insurers regarding "the payment of defense and indemnification costs" are actual controversies. *See Pioneer Creek B LLC*, 2021 WL 4427016, at *5.

Here, the State Court Litigation raises an actual controversy over Plaintiff's duties to defend and indemnify Defendants. The question of whether Plaintiff has a duty to defend or indemnify Defendants in the State Court Litigation is "immediate" and "substantial" because it will determine "whether and to what extent an insurance company is liable for future coverage." *GuideOne Specialty Mutual Ins. Co.*, 696 F. Supp. 2d at 212. Thus, Plaintiff's and Defendants' declaratory judgment claims are ripe for this Court's review. *See* 28 U.S.C. § 2201(a).

## B. The Parties' Cross-Motions for Summary Judgment

Defendants seek summary judgment on Plaintiff's rescission claim and on their second counterclaim that Plaintiff pay Defendants' legal fees incurred in the present litigation under *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080 (N.Y. 1979), and *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777 (N.Y. 2004). Defs.' Mot. at 1; *see* Answer & Countercl. at 10-11. Defendants argue that summary judgment is warranted because Plaintiff is collaterally estopped from litigating the ambiguity of the Question, Defendants did not make a misrepresentation on their insurance application, and alternatively, any alleged misrepresentation was immaterial; Defendants argue, accordingly, Plaintiff had no right to rescind the Policies, is

obligated to defend and indemnify Defendants in the State Court Litigation, waived its right to rescind the Policies and is equitably estopped from rescinding the policy.  *See* Defs.' Mot. at 1.

Plaintiff sets forth comparable arguments in both its opposition to Defendants' Motion and in its own Motion.  In both, Plaintiff argues that the Policies are void *ab initio* due to material misrepresentations in Defendants' insurance policy applications, such that Plaintiff has no obligation to defend or indemnify Defendants in the State Court Litigation.  *See generally* Pl.'s Opp'n; Pl.'s Mot.; *see also* Compl. ¶¶ 40-53.

### 1. Collateral Estoppel

Defendants argue that *74 Orchard St. Holding Inc. v. Union Mut. Fire Ins. Co.*, 52416/2021, 2023 N.Y. Misc. LEXIS 36373 (N.Y. Sup. Ct. May 24, 2023), collaterally estops Plaintiff's declaratory judgment action.  Defs.' Mot. at 13-15.  Plaintiff contends that Defendants waived the defense of collateral estoppel by failing to move to dismiss the Complaint on that ground.  Pl.'s Opp'n at 3-4.

Defendants do not use the phrase "collateral estoppel" in their Answer when asserting their affirmative defenses; they use the word "estoppel."  Answer & Countercl. ¶ 55.  "Generally, 'a failure to plead an affirmative defense results in a waiver.'"  *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (quoting *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994)).  However, if a defendant raises an affirmative defense in a motion for summary judgment, the court "has the discretion to entertain the defense . . . by construing the motion as one to amend the defendant's answer."  *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see Saks v. Franklin Covey Co.*, 316 F.3d 337, 350-51 (2d Cir. 2003).  Additionally, collateral estoppel may be raised by a district court *sua sponte* as there is a strong public policy favoring economizing the use of judicial resources by avoiding

11

relitigation. *Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir. 1998); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 882 F. Supp. 2d 396, 401 (E.D.N.Y. 2012).

Federal collateral estoppel bars successive litigation of "an issue of fact or law that was fully and fairly litigated by parties in a prior proceeding." *Forrester v. Corizon Health, Inc*., 278 F. Supp. 3d 618, 625 (E.D.N.Y. 2017) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)), *aff'd*, 752 F. App'x 64 (2d Cir. 2018).  However, when considering the preclusive effects of a prior state court judgment, "[f]ederal courts apply the collateral estoppel rules of the state that rendered the prior judgment." *Denicolo v. Bd. of Educ.*, 328 F. Supp. 3d 204, 211 (S.D.N.Y. 2018) (citing *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002)).  Under New York law, collateral estoppel bars re-litigation of an issue when "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had full and fair opportunity to litigate the issue in the first proceeding." *Hoblock v. Albany Cnty. Bd of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (alteration in original) (quoting *Moccio v. N.Y. State Off. of Court Admin.*, 95 F.3d 195, 200 (2d Cir. 1996)).  "[A] former judgment has no preclusive effect on a pure question of law." *W. Waterproofing Co. v. Zurich Am. Ins. Co.*, 20-CV-3199 (CM), 2023 WL 7183899, at *5 (S.D.N.Y. Nov. 1, 2023) (first citing *Plymouth Ventures II, L.P. v. GTR Source, LLC*, 988 F. 3d 634 (2d Cir. 2021); then citing *11th St. Assoc. LLC v. City of New York*, 30 N.Y.S.3d 550, 551 (1st Dep't 2016)).  "Federal preclusion law is of course otherwise, but federal preclusion law is not applied by a court sitting in diversity." *W. Waterproofing Co.*, 2023 WL 7183899, at *5.

*74 Orchard* is a New York state court action; therefore, the Court applies New York law to determine its preclusive effects on the instant matter.  Under New York law, "the issue of whether a provision is ambiguous is a question of law." *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d

163, 166 (2d Dep't 2017) (collecting cases); *N.H. Ins. Co. v. Clearwater Ins. Co.,* 7 N.Y.S.3d 38, 47 (1st Dep't 2015) ("The interpretation of an unambiguous contract is a question of law for the court, as is the determination of whether contractual language is ambiguous." (citations omitted) (collecting cases)); *see also Syntel Sterlin Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.,* 68 F.4th 792, 804 (2d Cir. 2023). The case at bar and *74 Orchard* wrestle with the issue of the same insurance policy application question as well as the Question's ambiguity in a scenario where an occupant and leaseholder differ. The *74 Orchard* court resolved the ambiguity of the Question as a matter of law, *74 Orchard,* 2023 N.Y. Misc. LEXIS 36373, at *10, and the interpretation of the Question here is a question of law. Thus, collateral estoppel does not bar consideration of Plaintiff's claim for relief.

Defendants reference *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002), and *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019), both of which applied federal preclusion law. Because these cases did not apply New York's collateral estoppel law, they are not relevant to the applicability of collateral estoppel here.

**2. Rescission**

Under New York insurance law, an insurer may rescind an insurance policy, and the policy shall be deemed void *ab initio*, if the insurer shows that its insured made a material misrepresentation of fact when securing the policy. *Interboro Ins. Co. v. Fatmir*, 933 N.Y.S.2d 343, 345 (1st Dep't 2011). A misrepresentation is a false representation "as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. INS. LAW § 3105(a). A material misrepresentation exists if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." *Id.* § 3105(b)(1). An insurer is entitled to rescind the policy if it can show that it was "induced . . . to accept an

application that it might otherwise have refused." *Moskovics*, 2025 WL 317519, at *3 (quoting *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 236 (E.D.N.Y. 2008)); *see also Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014) ("An insurer seeking rescission has the burden of proving the existence of a misrepresentation in the procurement process and the materiality of that misrepresentation—that is, that the insurer's knowledge of the truth would have resulted in refusal to issue the policy in the first instance."), *aff'd sub nom.*, *Cont'l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017); *see also Fanger v. Manhattan Life Ins. Co.*, 709 N.Y.S.2d 622, 622 (2d Dep't 2000).

### a. Misrepresentation: Ambiguity of the Term "Rented To"

Plaintiff argues that Defendants made a misrepresentation on their insurance policy application when Broker Portnoy answered "no" to the Question, and thus the Policies must be rescinded and declared void *ab initio*. Pl.'s Mot. at 16-20. Defendants argue that they made no material misrepresentation because the Question was "wholly ambiguous." Defs.' Opp'n at 4-5. The issue of whether Broker Portnoy's response to the Question on Defendants' behalf was a misrepresentation first turns on whether the Question was ambiguous.

Although New York law provides that "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract," if the contract is ambiguous, the ambiguity is interpreted in favor of the insured. *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 220 (2d Cir. 2021) (quoting *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)); *see also Vella v. Equitable Life Assurance Soc'y*, 392 (2d Cir. 1989); *Nadel v. Manhattan Life Ins. Co.,* 621 N.Y.S.2d 180, 180 (3d Dep't 1995). "Whether an ambiguity exists is a question of law to be determined from the viewpoint of 'a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally

14

understood in the particular trade or business.'" *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 274 (S.D.N.Y. 2005) (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Furthermore, "[a]n answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpreted the question as the insured did." *Id.* (citing *Fanger*, 709 N.Y.S.2d at 624); *cf. Sec. Mut. Ins. Co. v. Perkins*, 927 N.Y.S.2d 189, 190 (3d Dep't 2011) ("[A] response to a particular application question will only be held to be a material misrepresentation if the question is 'so plain and intelligible that any applicant can readily comprehend [it],' and any ambiguity will be construed against the insurer." (quoting *Nadel*, 621 N.Y.S.2d at 180)). Defendants are entitled to summary judgment if their understanding of the Question was reasonable, regardless of whether Plaintiff's reading is also reasonable. *See Dam Props. Holding Corp. v. Union Mut. Fire Ins. Co.*, 177 N.Y.S.3d 626, 626 (2d Dep't 2022).

Defendants argue that the term "rented" in the Question on the policy application is ambiguous. Defs.' Mot. at 11-16. They argue that "rented" is undefined in the Policy and Underwriting Guidelines. *Id.*; Def.'s Rule 56.1 ¶ 60. Defendants proffer the Merriam Webster definition of the term "rent," which means to "grant the possession and enjoyment of in exchange for rent." Defs.' Mot. at 12 (quoting *Rent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/rent (last visited Dec. 31, 2025)). By that definition, Defendants argue that the Property was "rented" to Melendez and Rivera because they were "granted the possession and enjoyment of" the Property in exchange for the rent paid by the Social Service Agencies. *Id.* Additionally, Defendants point out that the insurance brokers did not understand the Question to be inquiring as to corporate leaseholders; rather they interpreted the Question to be inquiring about whether there were any short-term leases or triple net leases. *Id.* at 16; Defs.' Rule 56.1 ¶¶ 32-33,

15

36; Pl.'s Rule 56.1 Resp. ¶ 36.  Defendants also point to Plaintiff's later addition of a question in the policy application asking, "are any of the dwelling units leased to or rented by a corporation, trust, LLC, or any form of legal entity other than a human being."  Defs.' Opp'n at 8.  Defendants argue this addition "attempt[s] to remedy the ambiguity in the Question" as applied to the Social Service Agencies.  *Id.*; Defs.' Mot. at 16.  Plaintiff denies that the addition of the question is an admission of ambiguity.  Pl.'s Rule 56.1 Resp. ¶ 37.  Ultimately, Defendants argue that ambiguity exists because there is no defined term and their interpretation was reasonable and subject to multiple interpretations that may have led Plaintiff to seek to clarify the question, and therefore the Question must be interpreted in their favor.  Defs.' Mot. at 11-13.

Plaintiff argues that the Question is unambiguous.  Pl.'s Opp'n at 4-5.  It argues that a term may be susceptible to multiple readings without being ambiguous.  *Id.* (quoting *Wiseman v. ING Groep, N.V.*, 16-CV-07587 (AJN), 2017 WL 4712417, at *6 (S.D.N.Y. Sept. 28, 2017)).  Plaintiff implores the Court to apply the definition for "rented" set forth in the New York Multiple Dwelling Law § 288, defining "rented" as "leased, let, or hired out, with or without a written agreement."  Pl.'s Opp'n at 5.  Plaintiff further argues that the addition of the allegedly clarifying question does not "render the prior application questions ambiguous as a matter of law."  *Id.* at 3.  Lastly, Plaintiff claims that the Property's manager, Minster, was made aware that Plaintiff did not permit nonprofit tenants and that such tenancies are not eligible for coverage, so "Defendants cannot now pretend that they understood the application to mean one thing when they were expressly told that such tenancies are not eligible for coverage[.]"  Pl.'s Opp'n at 6-7.

The fact that "rent" is undefined in the policy application and Plaintiff's Underwriting Guidelines, does not, in and of itself, render the word ambiguous.  *See Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 29 (1st Dep't 2015) (citing *Slattery Skanska Inc.*

*v. Am. Home Assur. Co.,* 885 N.Y.S.2d 264, 274 (1st Dep't 2009)). Nonetheless, a reasonable person could have interpreted the Question like Defendants did, and there are multiple constructions of the application question such that Plaintiff's construction was not so plain and intelligible that any applicant could readily comprehend it. *See Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC,* 16-CV-0437 (SJF) (SIL), 2018 WL 5622595, at *21 (E.D.N.Y. Mar. 30, 2018) (finding that questions on an insurance application were ambiguous where reasonably intelligent person in insured's position could rationally have interpreted inquiries like the insureds did); *Vella,* 887 F.2d at 392 (finding that the language of the application, when taken according to its normal usage, was susceptible to different meanings and therefore ambiguous).

The interpretation of "rent" in this context boils down to whether the Property "tenants" are the apartment inhabitants or the parties that signed the lease. As Plaintiff itself points out, "ambiguity only exists if a specific contractual term is susceptible to multiple readings." Pl.'s Opp'n at 4-5 (quoting *Wiseman,* 2017 WL 4712417 at *6). In the substantially similar circumstance of *74 Orchard*, the insureds interpreted the Question not to be prohibitive of Social Service Agencies, like Plaintiff apparently intended, but to prohibit those who run a commercial operation. *74 Orchard*, 2023 N.Y. Misc. LEXIS 36373, at *11. Additionally, the Question was subject to different interpretations among Defendants' brokers, none of whom interpreted the question to be inquiring about Social Service Agencies. Defs.' Rule 56.1 ¶¶ 32, 36. Broker Ungar did not recall ever being asked about program tenants at the Property. Broker Portnoy interpreted the question as asking about triple-net or short-term leases. The Question pointedly inquires about "anyone other than individuals on a long term lease," such that Broker Portnoy's interpretation that the Question sought to prohibit short term leases is not unreasonable. In addition, the Question is vague. While Plaintiff apparently intended for the Question to prohibit nonprofit organizations

17

paying for individual habitants, the Question itself does not specify that such a situation is precluded, which further undercuts Plaintiff's argument as to its unambiguity. *See Congregation Bais Yisroel,* 381 F. Supp. 2d at 275 (concluding a policy application form was ambiguous in part because "the question on the application regarding the insured's 'interest' in the premises to be covered was overly simplistic, which made it ambiguous").

Furthermore, various dictionary definitions emphasize that the verb "rent" is subject to more than one interpretation. *See, e.g.*, *Rent*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Consideration paid . . . for the use or occupancy of another's property."); *Rent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/rent (last visited Dec. 31, 2025) (defining "rent" alternatively as "1: to grant the possession and enjoyment of in exchange for rent" or "2: to take and hold under an agreement to pay rent"); *see also* N.Y. MULT. DWELL. LAW § 288, (defining "rented" as "leased, let, or hired out, with or without a written agreement").[3] On the one hand, using the Black's Law definition, the Question would refer to those who have paid for the use of the Property, which would conform with Plaintiff's interpretation. On the other hand, under the Merriam-Webster definition, the Question would refer to those who have been granted the possession and enjoyment of a unit in exchange for rent, which would accord with Defendants' interpretation. The Question is consequently subject to multiple interpretations.

While, generally, courts must resolve all factual ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought, *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003), when the language of an insurance contract is

---

[3] The Court only cites to the definition of "rented" under the New York Multiple Dwelling Law to the extent that the definition further establishes that "rent" is subject to several interpretations, further underscoring its ambiguity in the context of Plaintiff's Question. Plaintiff states that this definition "more accurately reflect[s] the legal understanding of the phrase under New York law," Pl.'s Opp'n at 5, which is incongruous with the interpretation standard of a "reasonable person in the insured's position."

ambiguous, "particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured," *Goldberger v. Paul Revere Life Ins. Co.,* 165 F.3d 180, 182 (2d Cir. 1999) (quoting *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir. 1995)).  It is undisputed that Plaintiff rescinded the Policies based on the alleged material misrepresentation. Defs.' Rule 56.1 ¶¶ 46-47.  Here, interpreting the ambiguity in favor of the insured, the Court finds that there was no misrepresentation as a matter of law.  Thus, summary judgment in favor of Defendants is proper.  *See Congregation Bais Yisroel*, 381 F. Supp. 2d at 272-75 (granting the insured summary judgment on the issue of misrepresentation and finding that the insurer's policy application question was ambiguous); *Brondon v. Prudential Ins. Co. of Am.,* 09-CV-6166T, 2010 WL 4486333, at *6-10 (W.D.N.Y. Nov. 9, 2010) (granting insured summary judgment on the issue of misrepresentation because the insurance policy application contained an ambiguous question). Since Defendants' responses to the Question do not constitute misrepresentations, Plaintiff's Motion on its rescission claim based on misrepresentation is denied, and Defendants' Motion dismissing Plaintiff's rescission claims on the basis of misrepresentation is granted.

### b.  Materiality

Within Plaintiff's rescission claim is an assertion that Defendants' alleged misrepresentation was material.  Plaintiff asserts that its Underwriting Guidelines programmed on the Roundhill application software would have prohibited Defendants from securing insurance if Defendants had answered the Question correctly.  Pl.'s Mot. at 9-12.  However, because the Court has determined that the Question was ambiguous, Plaintiff cannot meet its burden of showing that its rescission was based on a material misrepresentation.  *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* 193 F.3d 109, 119 (2d Cir. 1999) ("The burden is on the insurer to establish that it would have rejected the application if it had known the undisclosed information."); *see also Marshall Granger & Co., LLP,* 6 F. Supp. at 390.  Accordingly, Plaintiff's motion for summary

19

judgment seeking rescission based on materiality is denied, and Defendants' motion for summary judgment on Plaintiff's rescission claim on this basis is denied as moot.

### 3. Waiver and Equitable Estoppel

Defendants argue that Plaintiff waived the right to rescind the Policies by failing to cancel a similar policy at the Hertz Property. Defs.' Mot. at 23-25. Further, Defendants argue that because Plaintiff failed to immediately cancel the Hertz Property policy, despite knowing that it had Social Service Agencies on its lease, it should be equitably estopped from seeking to rescind the Policies. *Id.* Having found that Defendants are entitled to a motion for summary judgment on the fact that the Question was ambiguous, the Court does not reach a determination on whether Plaintiff waived or was estopped from asserting its right to void the Policies.

### 4. Duty to Defend and Indemnify

Plaintiff moves for summary judgment on its claim that it has no duty to defend or indemnify Defendants with respect to the claims arising from the State Court Litigation because it validly rescinded the Policies. Pl.'s Mot. at 1. Defendants do not cross-move for summary judgment on this claim.

"After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." FED. R. CIV. P. 56(f)(1); *see also Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020); *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000).

> When doing so, [the court] must take care "to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."

*Jian Yang Lin*, 950 F.3d at 49 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996)). On December 5, 2025, the Court issued an order stating that it was considering summary judgment independent of the pending cross-motions for summary judgment on Plaintiff's duty to defend and gave Plaintiff the opportunity to provide supplemental briefing on the issue.  On December 9, 2025, Plaintiff filed a supplemental brief in response to the Court's order.  *See* Pl.'s Supplemental Mem.

Plaintiff explained that it is currently "affording a defense to [Defendants] in the [*Rivera* action]" while the present action is pending and further acknowledged that "there is no dispute that the events giving rise to the [*Rivera* action] would otherwise be covered under the policy."  *Id.* at 1-2.

An insurer has a duty to defend the insured "[i]f the complaint contains any facts or allegations which bring the complaint even potentially within the protection purchased." *Technicon Elec. v. Am. Home Assurance Co.*, 542 N.E.2d 1048, 1050 (N.Y. 1989).  "Determining whether an insurer has a duty to defend 'requires an examination of the policy language and the allegations of the complaint' to see if 'the underlying complaint alleges any facts or grounds which bring the action within the protection purchased.'"  *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165–66 (2d Cir. 1998) (first quoting *Smith Pontiac-GMC Truck Ctr., Inc. v. Hartford Accident Indem. Co.*, 599 N.Y.S.2d 308, 309 (3d Dep't 1993); then quoting *State of New York v. Blank*, 27 F.3d 783, 790 (2d Cir. 1994), *abrogation recognized in*, *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121-22 (2d Cir. 2012)).

The duty to defend does not depend on the perceived merits of the underlying or related claim.  *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006); *see Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 90 (N.Y. 1991) (The duty to defend exists "even though

facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered."); *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140-41 (2d Cir. 2014) ("If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." (quoting *Auto Ins. Co.*, 850 N.E.2d at 1155)).

The Court now turns to whether the terms of the Policies trigger a duty for Plaintiff to defend Defendants in the State Court Litigation.[4]  Plaintiff does not establish as a matter of law that the duty to defend is not covered by the Policies.  The Policies include the obligation upon Plaintiff to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies [and] the right and duty to defend the insured against any 'suit' seeking those damages.  01 Policy at UM000383; 02 Policy at UM000517.  Melendez and Rivera allegedly sustained bodily injuries on the Property, a building in New York.  *See* Defs.' Rule 56.1 ¶¶ 42, 44.  Neither party disputes that these alleged injuries occurred during the 02 Policy period.  Defs.' Rule 56.1 ¶¶ 42, 44; Pl.'s Rule 56.1 ¶ 50.  Further, Plaintiff provides no evidence to suggest that Defendants were aware of the bodily injury prior to the 02 Policy period.  *See generally* Pl.'s Rule 56.1.  Because it fails to meet its burden, the Court denies Plaintiff's motion for summary judgment seeking a declaration that it has no duty to defend Defendants in the State Court Litigation.

Indeed, there is no dispute as to the duty to defend under the Policies.  *See* Pl.'s Supplemental Mem. at 1-2.  Under New York law, interpretation of a contract is a matter of law

---

[4] Because the *Melendez* complaint, *see* Complaint, *Melendez v. Wertzberger*, 819158/2022E (N.Y. Sup. Ct. Dec. 22, 2022), Dkt. 1, and *Rivera* complaint, *see* Verified Complaint, *Rivera v. Joyland Management LLC*, 811279/2023E (N.Y. Sup. Ct. July 25, 2023), Dkt. 1, are public and because neither party contests their authenticity, the Court takes judicial notice of them.  *See Wedra v. Cree, Inc*., 19-CV-3162 (VB), 2020 WL 1322887, at *2 (S.D.N.Y. Mar. 20, 2020) ("[T]he Court may take judicial notice of documents referenced in the complaint, even if the documents are not physically attached to the complaint, so long as their authenticity is not contested." (citing *Smith v. Westchester County*, 769 F. Supp. 2d 448, 458 n.7 (S.D.N.Y. 2011)).

for the courts to decide, and if the wording on the duty to defend is clear and unambiguous, it will be enforced according to its terms. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004). Additionally, the duty to defend is "exceedingly broad." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018). Therefore, summary judgment is granted in favor of Defendants on the matter of Plaintiff's duty to defend them in the State Court Litigation.[5]

The issue of Plaintiff's duty to indemnify relies upon a final decision in the underlying litigation. "Generally, an insurance company has an obligation . . . to indemnify the insured in the event of an incident." *Super Laundryland, Inc. v. U.S. Underwriters Ins. Co.,* 07-CV-2319 (HB), 2008 WL 3350186, at *2 (S.D.N.Y. Aug. 11, 2008) (citing *Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822, F.2d 267, 273 (2d Cir. 1987)). "[T]he duty to indemnify 'is determined by the actual basis for the insured's liability to a third person.'" *Moskovics*, 2025 WL 317519, at *8 (quoting *Euchner-USA, Inc.,* 754 F.3d at 140); *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249 (S.D.N.Y. 2019) ("[T]he duty to indemnify arises only when a third party's claim *actually* lies within a policy's coverage."), *aff'd*, 816 F. App'x 611 (2d Cir. 2020). Therefore, courts generally "defer a decision on indemnification until there has been a determination on liability in the underlying litigation[.]" *Starr Indem. & Liability Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 350 (S.D.N.Y. 2021) (collecting cases); *see Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); *Falls Lake Nat'l Ins. Co. v. BNH Construction (NY) Inc.*, 24-CV-4244, 2025 WL 925826, at *11 (E.D.N.Y. Mar. 27, 2025) ("[T]he

---

[5] The Court acknowledges that the *Melendez* action may be "discontinued." Pl.'s Supplemental Mem. at 1. Nonetheless, Defendant has brought a counterclaim seeking declaratory judgment that Plaintiff has a duty to defend them in both the *Rivera* and *Melendez* actions. *See* Answer & Countercl. ¶¶ 24-25. Accordingly, the Court addresses both actions.

court must find a practical likelihood that the third party will *prevail* in such litigation.") (quoting *Niagara Transformer Corp.,* 57 F.4th at 93).

Neither party has provided any evidence to suggest there has been a determination of liability in either State Court Litigation action.  While a review of publicly available documents demonstrates that the *Melendez* action may have settled out of Court, neither party has affirmatively provided the Court with evidence as to a determination of liability in either case. Therefore, the Court denies without prejudice the parties' Motions as to the duty to indemnify.

### 5.  Reimbursement of Defendants' Fees in this Action

Defendants move for summary judgment on their claim for recovery of attorneys' fees and costs because they have been cast in a defensive posture by Plaintiff.  Defs.' Mot. at 25.  *Mighty Midgets* provides that an insured may recover attorneys' fees and costs when it "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations."  389 N.E.2d at 1085.  "*Mighty Midgets* only applies 'when a policyholder has been cast in a defensive posture by its insurer *in a dispute over the insurer's duty to defend*.'"  *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005) (quoting *Emps. Mut. Cas. Co. v. Key Pharms.,* 75 F.3d 815, 824 (2d Cir. 1996)).  "The reasoning behind the *Mighty Midgets* exception is that an insurer's duty to defend extends to any action arising out of a covered event including an action brought by the insurer to free itself from covering the event."  *Id.* (citing *Aetna Cas. & Sur. Co. v. Dawson,* 444 N.Y.S.2d 10, 12 (1st Dep't 1981)).  Conversely, where an insurer's duty is secondary, entirely contingent on exhaustion, and has never actually been triggered, the rationale behind *Mighty Midgets* and its progeny does not apply.  *Id.* at 69.  Thus, an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend may recover attorney's fees expended in defending against that action, regardless of whether the insurer provided a defense to the insured.  *See U.S. Underwriters Ins. Co. v. City*

*Club Hotel, LLC*, 369 F.3d 102, 110 (2d Cir. 2004) (reiterating that *Mighty Midgets* applies where insurer has provided a defense in an underlying action but then brings an action for declaratory judgment that it has no duty to defend).  Defendants argue that Plaintiff commenced the instant litigation against them while simultaneously defending them subject to a reservation of rights and that they are thus entitled to attorneys' fees in the present action.  Defs.' Mot. at 25.  Other than its argument that it owes no duty to defend, Plaintiff does not respond to this claim in Defendants' Motion.

By filing this lawsuit to attempt to free itself from its duty to defend in the State Court Litigation, Plaintiff placed Defendants in a defensive posture .  *See N.Y. Marine & Gen. Ins. Co*, 599 F.3d at 128 (affirming the district court's denial of the insured's motion for attorney's fees where the insurer did not attempt to avoid its duty to defend and only contested its obligation to pay for the insured's firms, which were retained without the insurer's knowledge or consent and in contravention of the policy, and noting that "the insured is entitled to attorneys' fees only if the insured prevails in a dispute over the insurer's attempt to 'free itself' from its 'duty to defend'" (quoting *Segal Co.*, 420 F.3d at 67-68)).  Here, where the Court has denied Plaintiff's summary judgment and has found that Plaintiff owes Defendants a duty to defend, *see supra* Section B.4, Defendants have prevailed in Plaintiff's attempt to free itself from its duty to defend.  *Cf. Scottsdale Ins. Co. v. United Indus. & Const. Corp.*, 137 F. Supp. 3d 167, 182 (E.D.N.Y. 2015) (denying cross-motion for summary judgment seeking reimbursement of fees as premature because the issue of rescission had yet to be determined and, if the insurer prevailed, the duty to defend could likely change).  Accordingly, Defendants' request to recover reasonable attorney's fees expended in the defense of this action is granted.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion on rescission and its duty to defend is denied.  Defendants' Motion on rescission as to materiality is granted.  As such, Plaintiff's claim seeking declaratory judgment that the Policies are void *ab initio* is dismissed.  The parties' motions for summary judgment regarding indemnification claims are denied without prejudice until a liability determination is made in the State Court Litigation.  Defendants' Motion on attorney's fees expended in the defense of the present litigation is granted, and summary judgment is granted in favor of Defendants on their counterclaim for Plaintiff's duty to defend in the State Court Litigation.

Because the only remaining issue in this case is indemnification, and the outcome of that issue is dependent on the outcome of the State Court Litigation, namely the *Rivera* action, this case is administratively closed pending the resolution of the State Court Litigation and with leave to reopen the action within thirty days of resolution of the State Court Litigation.

SO ORDERED.

/s/ _____
ORELIA E. MERCHANT
United States District Judge

January 5, 2026
Brooklyn, New York

26